**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal No. 26-CR-30012-MGM** |
| **ANDREW D. EMERALD** | |

GOVERNMENT'S MEMORANDUM IN SUPPORTS OF ITS
MOTION FOR PRETRIAL DETENTION OF DEFENDANT (D.9)

The United States of America, by and through its undersigned counsel ("the Government"), respectfully submits this memorandum in support of its motion for the pretrial detention of defendant Andrew D. Emerald ("the defendant" or "Emerald") (D.9).

1.    Preliminary Statement

In 2018, Emerald used a Facebook account in his own name (the "Emerald Facebook Account") to suggest that someone should go on a mass shooting against President Donald J. Trump (then in his first term), which prompted the United States Secret Service and a local police department to interview him.

Undeterred by this interaction with law enforcement officers, between approximately May 3, 2025 and July 7, 2025, Emerald posted numerous explicit threats to kill President Trump (then in his second term), all in violation of 18 U.S.C. § 875(c).  In May 2025, Emerald relatedly threatened law enforcement by stating "they'll make a mistake coming after me and I'll kill them until they kill me."

Consistent with this statement, on April 1, 2026, when FBI agents executed an arrest warrant and search warrants at Emerald's residence, he repeatedly refused to comply with them,

and then brandished a sword, told the agents that they would have to shoot him, and barricaded himself in his home. Even after Emerald surrendered to the agents, he told them they were lucky they were not from ICE (*i.e.*, Immigrations and Customs Enforcement) because he would have come out of the residence with the sword.

Because no condition or combination of conditions can reasonably assure Emerald's appearance as required and the safety of the community, 18 U.S.C. § 3142(e), he must be detained pending his trial.

2.   Factual Background[1]

a.   Emerald's 2018 Threat Targeting President Trump

On January 26, 2018, a concerned citizen ("CC-1") submitted an online tip to the FBI about a possible mass shooting. The Secret Service subsequently determined that Emerald had posted a possible threat to shoot President Trump on the Emerald Facebook Account, including the following communication: "Why the fuck can't anybody go on a mass shooting against Trump and his administration if it's going to happen why can't it be fair the good. Or at least last candidate that shit. [sic]" Detention Affidavit, ¶¶ 5-6; Government Exhibit 1 attached hereto (screenshot of post).

Four days later, a Secret Service agent and a local police officer interviewed Emerald about

---

[1] The facts are set forth in greater detail in the Affidavit of Special Agent Keith M. Pellerin in Support of the Government's Motion for Detention sworn to on April 1, 2026 (D.10) (the "Pellerin Detention Affidavit"), which incorporates (1) the Affidavit of FBI Special Agent Darrell Hunter in support of an Application for a Search Warrant for the Emerald Facebook Account sworn to on May 19, 2025 in Docket No. 25-mj-3090-KAR (the "First Hunter Affidavit"); and (2) the Affidavit of Special Agent Hunter in in support of Applications for a Search Warrant for the Emerald Facebook Account, Emerald's residence in Great Barrington, and Emerald's person, sworn to on March 20, 2026 in Docket Nos. 26-mj-3028-CLM to 26-mj-3030-CLM (the "Second Hunter Affidavit").

his post, and Emerald stated, among other things, that he truly believes that would be the only way politicians in Washington would stop being criminals, but things will never change. During that interview, Emerald also voluntarily relinquished his rights to purchase, possess, and use firearms. Pellerin Detention Affidavit, ¶¶ 7-8.[2]

       b.     <u>Emerald's 2025 Use of the Emerald Facebook Account to Transmit Threatening Communications Concerning President Trump and Law Enforcement</u>

On May 12, 2025, another concerned citizen ("CC-2") informed the FBI that Emerald threatened President Trump by stating that others will hear a shot but it will be the shot that ends the President and by stating that Trump will lay dead at his feet. When CC-2 warned Emerald that it is a crime to threaten the life of the President, Emerald replied that he has done it for the last ten years and he will kill law enforcement that comes after him. Pellerin Detention Affidavit, ¶¶ 9-10.

Later on May 12, 2025, CC-2 sent the FBI screenshots of the online conversation that he described, including the following:

       a.     The Emerald Facebook Account posted, "I will when the FBI show up at the orange buffoons request again. Because I will not be silenced, detained or disappeared. So you will hear about me being shot, but it will be the shot that ends your fucking pedophile, Russian asset insurrectionist president. [sic]"

       b.     In response, a user stated, "no one's going to hear about you or give a shit what happens to you that's hilarious you people are insane [laughing emojis

---

[2] The Government submits that in this statement, Emerald admitted to the officers that he truly believed a mass shooting was the only way that politicians would cease their criminal conduct.

omitted].

c.      Emerald replied to the user, "we'll see when Trump lays dead at my feet."

d.      CC-2 replied to Emerald, "Just so you know a threat against the president even in jest is a felony under 18 U.S.C. 871 and it holds a sentence of five years in prison.  I have already given the FBI and Secret Service all of your details and screen shots.  I hope you spend those years reflecting on your life and statements."

e.      Emerald replied to the CC-2, "You don't seem to realize that I've been threatening him for 10 fucking years on here."

f.      Emerald further replied to the user, "I won't be going to jail. They'll either keep monitoring me or they'll make a mistake coming after me and I'll kill them until they kill me."

Pellerin Detention Affidavit, ¶ 11; Government Exhibit 2 attached hereto (screenshots).

c.      <u>The Indictment of Emerald and his Continued Threats</u>

On March 19, 2026, a Grand Jury sitting in Springfield, Massachusetts returned the above-captioned Indictment charging Emerald with eight counts of Interstate Transmission of Threatening Communications in violation of Title 18, United States Code, Section 875(c), all in connection with Emerald's use of the Emerald Facebook Account to post various threats to kill President Donald J. Trump between May 3, 2025 and July 7, 2025.  (D.4).

For example, on July 7, 2026, Emerald referenced his 2018 law enforcement interaction and relinquishment of his firearms rights in the following post (emphasis added):  "Yes, Donald Trump sent the FBI to strip my second amendment rights for calling him a Russian asset and High traitor that deserves the death penalty as listed on the constitution.  And the Gestapo actually came and sought that they accomplished something for him other than making me his nemesis far more

than I was before that day!  **Trump either you're dead by 2026 or I'm coming for you personally and if I'm the one that kills you, you're gonna suffer you little fucking bitch**." [sic].  Id., Count Eight; Government Exhibit 3 attached hereto (screenshot).

Emerald continued to use the Emerald Facebook Account to post communications threatening to kill President Trump and others as recently as March 18, 2026, when he posted: "Killing all of the treasons politicians and one presenters is exactly what the constitution says to do look at the second amendment and understand what it is actually there for. . . .  All we need to do is kill the people on the top that deserve exactly that." [sic].  Pellerin Detention Affidavit, ¶ 12; Government Exhibit 4 attached hereto (screenshot).

d.      The Arrest of Emerald and the Search of Emerald's Residence

On April 1, 2026, FBI agents executed an arrest warrant for Emerald and search warrants at Emerald's residence in Great Barrington, MA (the "Emerald Residence").[3]  The agents repeatedly knocked on the front door of the Emerald Residence, announced themselves, and stated that they were at the residence to execute the warrants.  Emerald did not initially respond.  After approximately two minutes, the agents breached the front door with a battering ram and continued to call out to Emerald without entering the residence.  Emerald did not initially respond and then stated in sum and substance, "I'm not coming anywhere with you."  When agents informed Emerald that they had a warrant for him, Emerald repeatedly responded that they did not and then stated again, in sum and substance, that he was not going anywhere with them.  Emerald continued to refuse the agents' lawful orders to come outside by repeatedly saying "no."  Pellerin Detention Affidavit, ¶¶ 13-16.

---

[3] Pursuant to FBI policy, agents wore activated body cameras, which recorded their interactions with Emerald discussed herein.

At some point thereafter, Emerald stepped into view. Emerald appeared to be brandishing a long, metallic sword in one hand and holding a sheath to that sword in the other hand. Government Exhibit 5 attached hereto (body camera screenshot). Emerald refused the agents' directions to drop his sword and stated repeatedly, in sum and substance, that the agents would have to shoot him. Emerald then shut the front door and dead-bolted it, preventing the agents from entering the apartment without a further breach. Pellerin Detention Affidavit, ¶ 17.

Agents then established a safe perimeter, contacted Great Barrington Police Department ("GBPD"), and engaged an FBI crisis negotiation team. A GBPD Police Officer attempted to call Emerald on his mobile phone, but Emerald did not answer the phone. An FBI crisis negotiator then sent Emerald text messages on his mobile phone requesting that he answer his phone. A GBPD Police Officer then called Emerald again on his mobile phone, and this time Emerald answered the phone. The GBPD Police Officer spoke with Emerald for a substantial period and asked that Emerald voluntarily leave the residence, and Emerald agreed to do so. A short while later, Emerald opened the door and agents took him into custody without further incident. Id., ¶ 18.

Agents then conducted a protective sweep of the residence and executed the search warrant for the residence. During this process, agents seized six bladed weapons: two swords, a machete, and three short knives. Id., ¶ 19 (depicted therein).

Agents escorted Emerald to an FBI vehicle and advised him of his *Miranda* rights. Emerald stated that he did not want to speak with the agents. However, while agents were conducting the search, Emerald stated spontaneously to an FBI agent and a Secret Service agent, in sum and substance, that the agents were lucky they were not from ICE (*i.e.*, Immigrations and Customs Enforcement) because Emerald would have come out of the residence with the sword. Id., ¶¶ 20-

21.

Emerald has used the Emerald Facebook Account to post threatening communications that explicitly referenced his sword, including the following on July 3, 2025: (1)"I plan to go to DC with my sword [sword emoji] and kill trump and as any of the domestic terrorist he emboldens as I can. If they are eliminated by September I'm going to do it myself" [sic]; and (2) "Which is why when I stick the sword through Trump's fucking throat, I'll have every fucking right pulse by creation and ethically actually legally, right!!! Anyone who is not in the same place that I am deserves to die with them!!!!" [sic]. Pellerin Detention Affidavit, ¶ 22.

3.  Legal Standard

The Government moves for Emerald's detention based upon his risk of flight and his commission of a crime of violence. 18 U.S.C. §§ 3142(f)(1)(A) and 3156(a)(4)(A); *United States v. Santoro*, 359 F.Supp.3d 122, 126-28 (D. Maine 2019) (holding that Section 875(c) is a crime of violence under the Bail Reform Act); *United States v. Dai*, 99 F.4th 136, 139-40 (2d Cir. 2024) (holding, in a Section 875(c) prosecution, that the phrase "for which a maximum term of imprisonment of 10 years or more is prescribed" does not modify the "crime of violence" in § 3142(f)(1)(A) and affirming defendant's pretrial detention).[4]

Under the Bail Reform Act of 1984, pretrial detention is required if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Court must find either (1) by clear and convincing evidence, that the defendant is a danger to the community or (2) by a preponderance of the evidence, that the defendant poses a risk of flight. 18

---

[4] The Second Circuit noted that the defendant did not dispute that Section 875(c) violations are crimes of violence under Section 3142. *Dai*, 99 F.4th at 139 n5.

U.S.C. § 3142(f).

Title 18, United States Code, Section 3142(g) outlines factors permitted to be considered by the Court in determining whether to order pre-trial detention:

> [I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the judicial officer shall] take into account the available information concerning–
>
> (1)    The nature and circumstances of the offense charged . . .;
>
> (2)    the weight of the evidence against the person;
>
> (3)    the history and characteristics of the person, including
>
>> (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole or on other release pending trial, sentencing, appeal, or completion of a sentence for an offense under Federal, State, or local law; and
>
> (4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

At the detention hearing, "the rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information . . . ." 18 U.S.C. § 3142(f).

4.    The Defendant Should Be Detained

Emerald should be detained because he is both a risk of flight and a danger to the community, and all of Section 3142(g) factors strongly favor detention.

8

a.      The Offense Is Grave

The "nature and circumstances of the offense charged" clearly weigh heavily in favor of detention. 18 U.S.C. § 3142(g)(1).  First, Emerald's threats involved explicit and repeated threats to kill President Trump.  Second, Emerald committed all of his charged threats in spite of a 2018 encounter with law enforcement concerning his suggestion that someone engage in a mass shooting of President Trump and his administration.  Third, Emerald made related threats to kill law enforcement or himself.

b.      The Evidence Is Powerful

The "weight of the evidence" is extremely strong and weighs heavily in favor of detention. 18 U.S.C. § 3142(g)(2).  As described above, Emerald's own words, made repeatedly on his own Facebook account, directly evidence the crimes set forth above.  Emerald's use of the Facebook account is further corroborated by his references to his 2018 law enforcement encounter and surrender of his firearm rights and to his sword (two of which were seized from his home on the day of his arrest).

c.      The Defendant's Personal History Favors Detention

The defendant's "history and characteristics" also favor detention.  18 U.S.C. § 3142(g)(3). Although Emerald does not have any criminal convictions, he persisted in his threats in spite of a 2018 interaction with law enforcement and after being warned by others online that his conduct was criminal.  Thus, Emerald appears unable to conform his behavior to the law and it is doubtful that he would comply with conditions of pretrial release.

d.      The Defendant's Release Endangers the Community

As described above, Emerald presents a grave danger to the community if released. He repeatedly threatened to kill President Trump, law enforcement officers, and even himself.  On

April 1, 2026, consistent with his threat to that law enforcement will "make a mistake coming after me and I'll kill them until they kill me," Emerald confronted arresting agents with a brandished sword, told the agents they would have to shoot him, engaged the agents in a lengthy standoff at his residence, and even after surrendering stated that the agents were lucky they were not from ICE because he would have come out of the residence with the sword.

Emerald's overall course of escalating conduct demonstrates that no condition or combination of conditions can reasonably assure the safety of the community. First, the defendant poses the clear risk that he will continue to threaten President Trump. *See, e.g.*, *United States v. Dai*, No. 3:23-cr-478 (BKS/TWD), 2023 WL 11016392, at *6-10 (N.D.N.Y. Dec. 19, 2023) (affirming detention of defendant who posted messages threatening to kill Jewish students, rape Jewish women, and behead Jewish children and stating "the Court must consider the risk that Defendant would post more threatening messages online if released"); *United States v. Capriotti*, No. 21-CR 16, 2021 WL 229660, at *3-6 (N.D.Ill. 2021) (stating that "[t]he threats as alleged in this case represent, in and of themselves, a distinct harm to the community" and '[t]he Court is ordering Defendant's detention out of a concern that the risk to community safety stems from the risk that he will communicate more threats . . . "); *United States v. Choudhry*, 941 F.Supp.2d 347, 354 (E.D.N.Y. 2013) (stating "[t]his uncontroverted evidence of explicit and chilling threats to kill numerous people in Pakistan is sufficient, on its own, to warrant pre-trial detention for being charged with a violent crime.")*; United States v. Pietila*, No. 1:23-cr-78, 2023 WL 4313162, at *3-5 (W.D.Mich. July 3, 2023) (reasoning that "[w]hile the plot he proposed in his messages may be beyond his ability, it is not a difficult task to find a gun and kill others before killing oneself.")

As the Court in *Dai* reasoned:

> '[Defendant's] threats alone represent a distinct harm to the community.' 'Threats, particularly those as explicit, graphic, and

> repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear.' And, if released, '[a]ny access at home or elsewhere, even momentary access to virtually any internet-capable cell phone, computer, laptop, or similar electronic device, whether prohibited or not, would allow [D]efendant to create and post more violent threats.'

*Dai*, 2023 WL 11016392, at *9 (citations omitted); *see United States v. Kane*, No. 3:20-mj-5054 TLF, 2020 WL 1660058, at *3-5 (W.D.Wash. Apr. 3, 2020) (stating "[t]he Court would not be able to effectively supervise the defendant's access to all means of digital communication – pretrial services professionals cannot be expected to follow him everywhere and determine whether he is using his own device (or someone else's device) or directing others to communicate plans to flee, or to communicate threats."); *United States v. Cooper*, No. 19-mj-4254, 2019 WL 4259454, at *4 (M.D. Tenn. Sept. 9, 2019) (noting that "threatening conduct [that] takes place on the internet [ ] is particularly difficult to control with conditions of pretrial release").

Second, "distinct from the risk that Defendant would post more threatening messages online if released is a concern that Defendant would follow through on one. Although Defendant does not have a prior criminal record or any history of violence toward others, and while there is no indication that he had any plan to act on any threat, he does have a history of violent ideation." *Dai*, 2023 WL 11016392, at *9.

For both of these reasons, this Court should detain Emerald as a danger.

        e.      <u>The Defendant Is A Flight Risk</u>

Emerald faces a maximum term of five years in prison, engaged arresting agents in a lengthy standoff at his residence, and told arresting agents that they should shoot him. "Suicide risk is also relevant in assessing the risk of non-appearance." *Dai*, 2023 WL 11016392, at *7 (citing cases). For all these reasons, there are no conditions that can reasonably assure his presence

in court.

     5.       <u>Conclusion</u>

For the preceding reasons, the Government respectfully requests that the defendant be detained pending his trial.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
(NY2915247)
Assistant U.S. Attorney
300 State Street, Suite 230
Springfield, MA 01105
413-785-0330
steve.breslow@usdoj.gov

**<u>Certificate of Service</u>**

I hereby certify that this document will be filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

By:    */s/ Steven H. Breslow*
STEVEN H. BRESLOW
Assistant U.S. Attorney

Dated:  April 3, 2026