UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal Case No. 3:26-CR-30012 |
| ANDREW DALE EMERALD, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON GOVERNMENT'S MOTION FOR DETENTION

Morgan, U.S.M.J.

On March 19, 2026, a Massachusetts grand jury indicted Andrew Dale Emerald with eight counts of interstate transmission of threatening communications, in violation of 18 U.S.C. § 875(c). On April 1, 2026, the Federal Bureau of Investigation arrested Mr. Emerald, and he had his initial appearance the same day. The government moved for detention under 18 U.S.C. § 3142(f)(1)(A) on the grounds that Mr. Emerald is charged with a crime of violence, (Dkt. No. 9), which the defendant did not challenge.[1] The court held the detention hearing on April 17, 2026.[2]

---

[1] In its motion, the government only sought detention based on 18 U.S.C. §3142(f)(1)(A). Dkt. No. 9. In its memorandum, however, the government stated that it was also moving for detention on grounds that Mr. Emerald is a risk of flight but did not cite to 18 U.S.C. § 3142(f)(2)(A) or otherwise develop its argument. Dkt. No. 17, at 7. As a result, the court did not consider risk of flight in granting the government's request for a hearing.

[2] The detention hearing was originally scheduled for April 6, 2026. On that date, Mr. Emerald requested a continuance to allow the United States Probation Office to inspect a proposed residence for him and to evaluate a potential third party custodian. As a result, with the assent of the government, the court continued the hearing to April 17, 2026.

At the hearing, the parties elected to proceed by proffer. The government argued that there are no conditions of pretrial release that would reasonably assure the defendant's appearance as required and the safety of the community. Mr. Emerald contended that the court could impose conditions that would mitigate any risk of flight or danger to the community. At the time of the hearing, the court had the benefit of the pretrial services report and addendum, the government's motion for detention and accompanying affidavit (Dkt. Nos. 9 & 10), the government's memorandum with exhibits (Dkt. No. 17), and defendant's motion for release with the corresponding exhibits (Dkt. No. 25). After hearing from the parties, the court took the government's motion under advisement.

For the reasons stated below, the court finds that the government has met its burden of showing by clear and convincing evidence that no conditions or set of conditions can reasonably assure the safety of the community if Mr. Emerald is released. The court similarly finds the government has met its burden of establishing by a preponderance of the evidence that no conditions or set of conditions can reasonably assure the appearance of Mr. Emerald as required. Therefore, I order Mr. Emerald detained pending trial.

## LEGAL STANDARD

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 756 (1987). Thus, under the Bail Reform Act, a defendant must be released pending trial unless the government establishes by clear and convincing evidence that the

defendant is a danger to the community and no conditions or combination of conditions can reasonably assure the safety of the community, or by a preponderance of the evidence that the defendant poses a serious risk of flight and no condition or combination of conditions will reasonably assure the appearance of the person as required. 18 U.S.C. §§ 3142(e), (f); *United States v. Patricia*, 948 F.2d 789, 791-93 (1st Cir. 1991).

In assessing whether conditions exist that will ensure the defendant's appearance and mitigate any potential risk to the community, the court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including personal character, family ties, community ties, criminal history, and other related factors; and (4) the nature and seriousness of the danger to any person or the community if the defendant is released. 18 U.S.C. § 3142(g). "Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990).

## ANALYSIS OF THE FACTORS UNDER 18 U.S.C. § 3142(G)

### A. Danger to the Community

#### 1. *Nature of the Offense*

Mr. Emerald is charged by indictment with eight counts of interstate transmission of threatening communications, in violation of 18 U.S.C. § 875(c), each of which carries a potential term of imprisonment of up to five years. The

indictment alleges that between May 3, 2025, and July 7, 2025, Mr. Emerald made eight separate Facebook posts in which he threatened to kill the President of the United States. Although it is not alleged in the indictment that Mr. Emerald took any steps to act on these threats, that does not alter the reality that threatening to murder an elected official is a serious charge. Accordingly, the court finds that the nature of the offense weighs in favor of detention.

### 2. *Weight of the Evidence*

The evidence supporting the charges appears to be strong. The indictment alleges that the posts underlying the charges were made on a Facebook account that Mr. Emerald operated. At the detention hearing, Mr. Emerald did not argue that the posts were not made by him. Rather, Mr. Emerald contends that the weight of the evidence is weakened by the fact that the indictment and government proffer do not allege any planned or attempted acts connected to the Facebook posts. Dkt. No. 25, at 6. Section 875(c) does not require the government to prove that the defendant planned or attempted to carry out the charged threats. *See Elonis v. United States*, 575 U.S. 723, 737 (2015) ("Section 875(c)…requires proof that a communication was transmitted and that it contained a threat.") Therefore, although mindful not to reach any conclusions about Mr. Emerald's guilt or innocence, the court finds that the weight of the evidence supports detention.

### 3. *History and Characteristics of the Defendant*

Mr. Emerald is a 45-year-old lifelong resident of Massachusetts, who has lived in Great Barrington, Massachusetts since 2019. He has a minor child who

does not live with him. His sister lives in the eastern portion of Massachusetts and two of his brothers live in West Virginia.[3] Mr. Emerald's sister was present at the detention hearing. Mr. Emerald proposes that if released he would live with his sister, who would also serve as a third-party custodian for a period, before moving to West Virginia to live with his brother, who would then serve as the third-party custodian. Mr. Emerald suffers from epilepsy and has been unable to work since 2017. He receives Social Security Disability Income (SSDI) that barely covers his expenses.

Mr. Emerald has a limited criminal history, with the most recent charge coming more than eighteen years ago. His criminal history does include a default warrant related to a motor vehicle charge, which was cleared within one day, and state possession charges, two of which were continued without a finding and two of which were dismissed. He received one year probation for the possession charges that were continued without a finding. He allegedly violated the terms of his probation twice. At the hearing, Mr. Emerald characterized these as minor violations that were quickly addressed, and the court finds that they have little impact on the court's analysis here.

In his interview with the U.S. Probation Office, Mr. Emerald did not identify any mental health issues but acknowledged that he received some counseling in the past and is willing to attend counseling if released. He denies current or prior

---

[3] The week following the defendant's arrest, Mr. Emerald's third brother tragically passed away in Great Barrington, Massachusetts.

suicidal ideation or attempts. With that said, Mr. Emerald's sister, in her letter to the court, notes that he is dealing with "loneliness, isolation and depression," and that the medications he takes "cause all level of emotional and mind altering and physical issues." Dkt. No. 25-1, at 2. His brother notes that Mr. Emerald has dealt with "significant physical, mental and emotional challenges throughout his life" and that hardships have "shaped his fight-or-flight response." Dkt. No. 25-2, at 1. In addition, his brother notes that Mr. Emerald's medication can "make it difficult to filter thoughts, and trigger bouts of intense rage." *Id.*, at 2.

Mr. Emerald's Facebook posts raise concerns regarding his mental health, including that he may be at risk of self-harm or may take actions that could lead to his death. They also raise concerns that he is willing to disregard the law and the authority of those seeking to enforce it. For instance, in 2025, after Mr. Emerald posted on Facebook that he would kill the President, a Facebook user told him that they had reported his posts to the FBI and Secret Service. Dkt. No. 10, ¶ 11(a)-(d). In response, Mr. Emerald replied that he had "been threatening him for 10 fucking years on [Facebook]" and that "I won't be going to jail. They'll either keep monitoring me or they'll make a mistake coming after me and I'll kill them until they kill me." *Id.*, ¶ 10(e)-(f). Similarly, when agents executed the arrest warrant and a search warrant at his residence, Mr. Emerald initially refused to come out despite the agents stating that they had a warrant for him. Dkt. No. 10, ¶ 16. He eventually stepped into view brandishing a sword and stated repeatedly that the agents would have to shoot him. Dkt. No. 10, ¶ 17. Mr. Emerald argued at the

hearing that his statements during the execution of the warrants were merely the result of his confusion given the early hour. In the court's assessment, however, statements by Mr. Emerald that the agents would have to kill him raise serious concerns.  Accordingly, the court finds that Mr. Emerald's history and characteristics favor detention.

4. *The Nature and Seriousness of Danger Posed by Release.*

Mr. Emerald proposes that he be released on a variety of conditions that would allow him to address any mental health issues and provide an environment in which he could be closely supervised. While Mr. Emerald's proposed release plan may have some benefits, it fails to address the substantial evidence offered by the Government indicating that Mr. Emerald would remain a continued threat to the community both in the form of additional internet postings and actual violence against government officials.

As a threshold matter, Mr. Emerald continued to post violent threats on Facebook after he was warned in 2018 to cease such behavior and continued those threats until weeks before his arrest. In 2018, the Federal Bureau of Investigation received a tip about a possible mass shooting. Dkt. No. 10, ¶ 6. The U.S. Secret Service subsequently identified a post on a Facebook account in Mr. Emerald's name stating, "Why the fuck can't anybody go on a mass shooting against Trump and his administration if it's going to happen why can't it be fair [sic] the good. Or at least last candidate that shit." *Id.* A Secret Service agent and Bourne Police officer interviewed Mr. Emerald at his then-residence in Bourne a few days later.

*Id.*, ¶ 7. Mr. Emerald told the investigators that he posted on Facebook a statement along the lines of "the only way to clean things up in Washington, D.C. would be if all of the politicians including Donald Trump were publicly executed," (*id.*, ¶ 7(a)), and that he followed that post with another stating "of course that will never happen," (*id.*). During the interview, Mr. Emerald told the investigators that he would never post anything about politics again, (*id.*, ¶ 7(b)), and voluntarily requested entry into the National Instant Criminal Background Check System ("NICS"), which would prevent him from purchasing, possessing or using any firearm, (*id.*, ¶ 8). Despite his promise to stop posting about "politics," Mr. Emerald returned to posting violent threats on Facebook. Thus, the court concludes that if it were to order Mr. Emerald released on conditions, he is likely to resume posting threats.

At the detention hearing, Mr. Emerald argued that his continued posting of threats after being contacted by the Secret Service is not predictive of his future compliance with pretrial release conditions because the court's conditions would carry more weight. The court does not have any basis to reach such a conclusion. Rather, Mr. Emerald's actions and statements lead the court to the opposite conclusion—that his indictment and arrest may lead to further threats, or even acts of violence, regardless of the conditions imposed.

Mr. Emerald's own posts show that he views the government's actions in response to his online threats to be an infringement on his constitutional rights that justify violence. On May 15, 2025, Mr. Emerald posted a threat directed at the

President, stating that he would be "going after him for taking my second amendment rights on constitutionally [sic] for calling him the Russian asset that he is!" Dkt. No. 4, at 3 (Count Four). On July 3, 2025, Mr. Emerald posted on Facebook:

> Just like I've said, since he unconstitutionally stripped me of my second amendment rights sending the FBI after a disabled private citizen that was exercising his first amendment rights completely legally.
>
> Which is why when I stick the sword through Trump's fuckin throat, I'll have every fucking right pulse by creation and ethically actually legally, right!!!
>
> Anyone who is not in the same place that I am deserves to die with them!!!
>
> Because you don't care about your children or your world's future.

Dkt. No. 10, ¶ 22. Four days later, Mr. Emerald made another post, which stated in part, "Yes, Donald Trump sent the FBI to strip my second amendment rights…And the Gestapo actually came and sought [sic] that they accomplished something other than making me his nemesis far more than I was before that day. Trump either you're dead by 2026 or I'm coming for you personally." Dkt. No. 17-3. Thus, seven years after he was contacted by law enforcement, Mr. Emerald continued to believe that the government had infringed on his rights and that he would be justified carrying out acts of violence as a result. Now Mr. Emerald has been indicted and arrested, not just contacted by law enforcement. As a result, the court concludes that Mr. Emerald will likely view the charges against him as another, more serious infringement on his rights, which past behavior suggests will lead to non-compliance with any terms of release and further threats of violence. Moreover, given Mr. Emerald's past statement threatening "anyone who is not in the same

place that I am," he is unlikely to follow the direction of those responsible for ensuring his compliance with the terms of his release.

Moreover, the court notes that Mr. Emerald's posts are not harmless. "Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear." *United States v. Capriotti*, No. 21 CR 16, 2021 WL 229660, at *5 (N.D. Ill. Jan. 22, 2021) (noting that decision to detain pending trial did not depend on whether defendant had intent to carry out his threats, but instead on fact that threats were themselves harmful). In this case, Mr. Emerald directed threats at not only the President, but other elected officials, (Dkt. No. 10, ¶ 12), "one per[c]enters," (*id.*), "the people at the top," (*id.*), Immigration and Customs Enforcement personnel (*id.*, ¶ 21), and the broader community ("[a]nyone who is not in the same place as I am"), (*id.*, ¶ 22(b)).

Further, Mr. Emerald responded to another individual's post on Facebook by stating "when the FBI show up at the orange buffons [sic] request again" that he would "not be silenced, detained or disappeared. So you will hear about me being shot." Dkt. No. 10, ¶ 11(a). When the individual told Mr. Emerald that he had reported him to law enforcement, Mr. Emerald explicitly stated that the government would "either keep monitoring me or they'll make a mistake coming after me and I'll kill them until they kill me." *Id.*, ¶ 11(f). Mr. Emerald's statements nearly came true. When confronted with federal agents at his door, he brandished a sword—the very weapon he said he would use to kill the President—and told agents

they would have to shoot him. Moreover, even after he surrendered to the FBI, he told those agents that if they had been from Immigration and Customs Enforcement he "would have come out of the residence with the sword." Dkt. No. 10, ¶ 21. Given these circumstances, the court finds that there are no conditions of release that would ensure the safety of the community. Rather, Mr. Emerald's past conduct and statements suggest that if released he would pose a danger to the community, and, in particular, law enforcement, which he previously threatened with violence based on a perceived infringement of his rights.

The court therefore finds that the government has met its burden of establishing by clear and convincing evidence that no conditions or combination of conditions would ensure that Mr. Emerald would not present a threat to the community if released.

## B. Risk of Nonappearance

As to risk of nonappearance, the court finds that the government has met its burden. The government contends that Mr. Emerald is a suicide risk and therefore a risk of nonappearance. Although home detention and release to a third-party custodian would help mitigate potential risk of non-appearance at future proceedings, the court has significant concerns regarding Mr. Emerald's statements and actions that suggest an eagerness to provoke harm to himself. As noted, Mr. Emerald posted online that if the FBI or Secret Service attempted to act based on his online threats, he would "kill them until they kill me." Dkt. No. 10, ¶ 11(f). When law enforcement executed the search warrants and arrest warrants in this

matter, Mr. Emerald brandished a sword and told law enforcement multiple times that they would have to shoot him. *Id.*, ¶ 17. As discussed above, if released, there is reason to believe that Mr. Emerald will make threats that put him in a similar situation with law enforcement again. The court cannot disregard Mr. Emerald's own statements and actions, even where he has denied past suicide attempts or ideation. The court therefore finds that Mr. Emerald is at risk of nonappearance because he is a suicide risk, which includes the risk of his taking actions that would lead law enforcement to shoot him, and that no conditions or combination of conditions can reasonably assure his appearance. *United States v. Dai*, No. 3:23-CR-478 (BKS/TWD), 2023 WL 11016392, at *7 (N.D.N.Y. Dec. 19, 2023), *aff'd*, 99 F.4th 136 (2d Cir. 2024) ("Suicide risk is also relevant in assessing the risk of non-appearance.")

## ORDER OF DETENTION

In accordance with this memorandum, it is ORDERED that the defendant be DETAINED pending trial, and is further ORDERED that:

(1) Mr. Emerald be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) Mr. Emerald be afforded reasonable opportunity for private consultation with counsel; and

(3) On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Mr.

Emerald is detained and confined deliver him to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

Mr. Emerald is advised that he has the right to file a motion for revocation or amendment of this Order under the provisions of 18 U.S.C. § 3145(b) and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts.


Date: April 19, 2026                    <u>/s/ Christopher L. Morgan</u>
                                        CHRISTOPHER L. MORGAN
                                        United States Magistrate Judge